UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATEO REYES, *individually and on behalf of others similarly situated,*

                                   Plaintiff,

                    -against-

CAFE COUSINA RESTAURANT INC. (d/b/a CAFE COSINA RESTAURANT), MARIA CARINO and ISRAEL MORAN,

                                   Defendants.

18cv1873 (PAE) (DF)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE PAUL A. ENGELMAYER, U.S.D.J.:**

On March 1, 2018, plaintiff Mateo Reyes ("Plaintiff"), purportedly on behalf of himself and others similarly situated, commenced this putative collective action pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, *et seq*., and the New York Labor Law (the "NYLL"), §§ 190, *et seq*., and 650, *et seq*., to recover unpaid minimum and overtime wages, unpaid spread-of-hours pay, statutory damages, liquidated damages, prejudgment interest, and attorneys' fees and costs. Plaintiff's Complaint named three defendants: Cafe Cousina Restaurant Inc. (d/b/a Cafe Cosina Restaurant) ("CCRI"), Maria Carino ("Carino"), and Israel Moran ("Moran") (collectively, "Defendants"). After Defendants failed to move, answer, or otherwise respond to the Complaint, the Honorable Paul A. Engelmayer, U.S.D.J., entered a default judgment against them in Plaintiff's favor (Dkt. 29), and referred the matter to this Court to conduct an inquest concerning Plaintiff's damages (Dkt. 28).

For the reasons that follow, I recommend that Defendants be held jointly and severally liable to Plaintiff for (1) damages in the amount of $126,905.50, representing (a) $53,088.75 in unpaid overtime wages, (b) $5,364.00 in unpaid spread-of-hours pay, (c) $58,452.75 in

liquidated damages under state law, and (d) $10,000.00 in statutory damages under state law;
(2) prejudgment interest in the amount of $7,700.21, plus additional prejudgment interest to be
calculated by the Clerk from August 28, 2018 (the date of the Plaintiff's inquest filing) to the
date of the final judgment; and (3) attorneys' fees and costs in the amounts of $4,275.00 and
$400.00, respectively.

## BACKGROUND

### A.    Factual Background

Given Defendants' default, the well-pleaded allegations contained in the Complaint, as
summarized below, are deemed to be true, except for those allegations relating to damages.  (*See*
Discussion *infra*, at Section I(A); Complaint, dated Mar. 1, 2018 ("Compl.") (Dkt. 1); *see also,
e.g.*, *Guaman v. J&C Top Fashion, Inc.*, No. 14cv8143 (GBD) (GWG), 2017 WL 111737, at *1
(S.D.N.Y. Jan 11, 2017).)  The facts included herein are also taken from a Declaration submitted
by Plaintiff (*see* Declaration of Mateo Reyes, sworn to Aug. 7, 2018 ("Reyes Decl.") (Dkt. 24)),
and a Declaration submitted by Plaintiff's counsel, Shawn Clark, Esq. ("Clark") (*see* Declaration
of Shawn Clark, Esq., in Support of Plaintiff's Motion for Default Judgment, dated Aug. 27,
2018 ("Clark Decl.") (Dkt. 25)), and exhibits thereto.

Plaintiff alleges that, from approximately March 7, 2016 to October 2016, and then from
approximately January 2017 to February 2, 2018, he was employed, primarily as a tipped
delivery worker, at an establishment known as Cafe Cosina Restaurant ("Cafe Cosina"), located
at 1350 Jerome Avenue in the Bronx, that was owned, operated, and controlled by Defendants.
(*See* Reyes Decl. ¶¶ 3-7; Compl. ¶¶ 5, 38.)  Plaintiff alleges, however, that he spent over
20 percent of each day performing non-tipped work, such that his wages should not have been
subject to a tip credit.  (*See* Compl. ¶¶ 41, 65.)  Plaintiff claims that, from January 2017 to

2

February 2, 2018, he was not compensated at the applicable minimum-wage rate for the first 40 hours of his work week, and, throughout his employment at Cafe Cosina, he was not compensated at one-and-a-half times the minimum wage for the hours he worked in excess of 40 hours per week.  (*See* Reyes Decl. ¶ 26; Compl. ¶ 59.)  Plaintiff alleges that he generally worked a roughly 12-hour shift, six days per week, for a total of 73 hours per week, receiving no breaks of any kind.  (*See* Reyes Decl. ¶¶ 13, 19; Compl. ¶ 45.)  From approximately March 7, 2016 to October 2016, Plaintiff was allegedly paid $450 per week, and from approximately January 2017 to February 2, 2018, Plaintiff was allegedly paid $500 per week.  (*See* Reyes Decl. ¶¶ 15-16.)  Plaintiff alleges that his pay did not vary when he worked a longer day than usual. (*Id.* ¶ 17.)

Plaintiff also alleges that, for the duration of his employment, Defendants paid him his wages in cash and never provided him with a statement of his wages or any notice, either in English or in Spanish (Plaintiff's primary language), regarding his pay rate, his regular pay day, or any other information about his pay.  (*See id.* ¶¶ 24-25.)  According to Plaintiff, Defendants failed to provide him with written information regarding minimum-wage and overtime requirements, and also failed to maintain conspicuous posters within his work area containing this information.  (*See id.* ¶¶ 23, 28.)  Moreover, Plaintiff alleges that Defendants did not require him to track his time, nor did Defendants track his time themselves, by using any time-tracking device, such as a punch clock.  (*See id*. ¶ 22; Compl. ¶ 54.)

### B.   <u>Procedural History</u>

As noted above, Plaintiff commenced this action by filing a Complaint on March 1, 2018. (*See* Compl.)  After Defendants failed to respond to the Complaint, the Clerk of the Court issued Certificates of Default as to each of the three named defendants.  (Dkts. 19-21.)  On August 27,

2018, Plaintiff proceeded to file a motion for a default judgment against all Defendants.
(Dkt. 22.)  Judge Engelmayer scheduled a hearing on this motion, at which Defendants failed to appear.  (Dkt. 26; Minute Entry for Oct. 26, 2018.)  Consequently, Judge Engelmayer entered a default judgment against all Defendants on October 29, 2018 (Dkt. 29) and referred the case to this Court for an inquest on damages and attorneys' fees (Dkt. 28).  In connection with his motion for a default judgment, Plaintiff filed papers setting out the amount claimed to be due from Defendant in damages, interest, attorneys' fees, and costs, as well as the basis for those claims (*see* Reyes Decl.; Clark Decl.), and this Court issued a scheduling order on November 5, 2018 that afforded Defendants an opportunity to respond to Plaintiff's damages calculations (Dkt. 30).  Although a response was due on December 14, 2018, Defendants, to date, have filed none.

## DISCUSSION

## I.      APPLICABLE LEGAL STANDARDS

### A.      Default Judgment

"[D]efault is an admission of all well-pleaded allegations against the defaulting party."
*Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citation omitted).  Although a "'default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability,'" it does not reach the issue of damages.  *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).  In conducting a damages inquest, the Court accepts as true all of the factual allegations of the complaint, except those relating to damages.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

4

A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages.  *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered, and the court will then determine whether the relief flows from the facts (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974))).  The burden is on the plaintiff to "introduce sufficient evidence to establish the amount of damages with reasonable certainty," *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv1369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013) (citations omitted), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013), although the plaintiff is entitled to all reasonable inferences in its favor based on the evidence submitted, *see U.S. ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation).  Where a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages, *see Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997), and the Court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs alone, *see, e.g.*, *Garden City Boxing Club, Inc. v. Hernandez*, No. 04cv2081 (LAP) (DF), 2008 WL 4974583, at *4-5 (S.D.N.Y. Nov. 24, 2008) (adopting report and recommendation) (determining the adequacy of plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing).

While the Court may hold a hearing to assess the amount of damages that should be awarded on default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves

the decision of whether a hearing is necessary to the discretion of the district court." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given "much discretion" to determine whether an inquest hearing need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing" (citations omitted)).

### B.     Burden of Proof in Wage Cases, Where Defendants' Records Are Inadequate or Have Not Been Produced

In an FLSA case, the burden falls on the plaintiff-employee to demonstrate "'that he performed work for which he was not properly compensated.'" *Santillan v. Henao*, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251, *et seq.*).  As noted by the Supreme Court, however, employees "'seldom keep . . . records [of hours worked] themselves,'" *id*. at 294 (alteration in original) (quoting *Anderson*, 328 U.S. at 687), and, "'even if they do, the records may be and frequently are untrustworthy,'" *id*. (quoting *Anderson*, 328 U.S. at 687).  Employers, on the other hand, have a duty to maintain such records pursuant to Section 11(c) of the FLSA, and, thus, the "easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secur[e] the production of such records' from the employer."  *Id.* (alteration in original) (quoting *Anderson*, 328 U.S. at 687).

A defaulting defendant "deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages."  *Id.*  As a result, where a defendant defaults, a plaintiff may meet his burden of proof "by relying on recollection alone" to establish that he "performed work for which he was improperly compensated."  *Id.* at 293-94 (citing cases and finding, in default context, that plaintiff provided a "sufficient basis for [the] determination of damages" where he "submitted a sworn declaration

containing information as to hours worked and rates of pay based on estimation and recollection," even where the plaintiff's submission was "general and not detailed" (internal quotation marks and citations omitted)). "Moreover, in the absence of rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Id.* (internal quotation marks and citations omitted); *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (holding that where an employer fails to produce evidence regarding the amount of work that the employee performed or evidence to negate "the reasonableness of the inference to be drawn from the employee's evidence," the court may "award damages to the employee, even though the result be only approximate" (quoting *Anderson*, 328 U.S. at 687-88)).

Under New York law, courts actually "go[] one step further and require[] that employers who fail to maintain the appropriate records 'bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Santillan*, 822 F. Supp. 2d at 294 (quoting N.Y. Lab. Law § 196-a).

### C.    FLSA and NYLL Statutes of Limitations

Under the FLSA, the applicable statute of limitations is generally two years, except that, where the employer is found to have committed a "willful" violation of the law, the limitations period is extended to three years. 29 U.S.C. § 255(a). Willfulness under the FLSA is found where an employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "[A] defendant's default, in itself, may suffice to support a finding of wil[l]fulness." *Santillan*, 822 F. Supp. 2d at 297. The applicable limitations period for NYLL claims is six years. N.Y. Lab. Law § 663(3).

### D.   Damages Available Under the FLSA and NYLL
####      for Minimum-Wage and Overtime-Pay Violations

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum
wage for the first 40 hours that he or she worked in a given work week.  29 U.S.C. § 206(a).
Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 per
week), at a "rate not less than one and one-half times the regular rate at which [the employee] is
employed."  *Id*. § 207(a)(1); *see also, e.g.*, *Chun Jie Yin v. Kim*, No. 07cv1236 (DLI) (JO), 2008
WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (adopting report and recommendation and noting that
"[t]he FLSA requires employers to pay their employees the statutory minimum wage as well as a
premium (150 percent of the statutory minimum wage) for hours worked above 40 hours per
week" (citations omitted)).  A plaintiff with a successful minimum-wage claim under the FLSA
is entitled to recover damages up to, but not exceeding, these statutory amounts.  *See Santillan*,
822 F. Supp. 2d at 293.  On July 24, 2009, the federal minimum wage was increased from $6.55
to $7.25 per hour, *see* 29 U.S.C. § 206(a)(1)(C), and the corresponding overtime pay requirement
(*i.e.*, 150 percent of that rate) was therefore increased from $9.825 to $10.875 per hour.

Under the NYLL, a prevailing plaintiff is entitled to recover "the full amount of wages
owed, not just the statutory minimum wage for the hours worked."  *Santillan*, 822 F. Supp. 2d
at 293 (internal quotation marks and citation omitted); *see also* N.Y. Lab. Law § 198(3) ("All
employees shall have the right to recover full wages . . . accrued during the six years previous to
the commencing of such action.").  Where, however, a plaintiff-employee was not owed more
than the minimum wage, the statutory rates apply.  For the periods relevant to this action, the
New York statutory minimum wage for "large employers" – *i.e.*, those with 11 or more
employees – located in New York City was the following:  prior to December 31, 2016, $9.00
per hour; as of December 31, 2016, $11.00 per hour; as of December 31, 2017, $13.00 per hour.

N.Y. Lab. Law § 652(1)(a)(i).  The minimum wage for "small employers" – *i.e.*, those with 10 or fewer employees – was the following:  prior to December 31, 2016, $9.00 per hour; as of December 31, 2016, $10.50 per hour; as of December 31, 2017, $12.00 per hour.  *Id.* § 652(1)(a)(ii).  Regulations promulgated under the NYLL, like the FLSA, mandate payment at one-and-one-half times the regular normal rate for each hour worked by an employee in excess of 40 hours per week.  12 N.Y.C.R.R. § 146-1.4.

Where an employee earns a fixed salary, "the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate."  29 C.F.R. § 778.113(a).  Furthermore, courts have recognized that, under the FLSA, there is a "rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement."  *Pinovi v. FDD Enterps., Inc.*, No. 13cv2800 (GBD) (KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015); *see also Giles v. City of New York*, 41 F. Supp. 2d 308, 316-17 (S.D.N.Y. 1999) ("The fact that an employee regularly works 60 or more hours does not, without more, indicate that the employee's weekly salary was intended to include the FLSA overtime premium for all hours in excess of 40.").  Courts in this District have extended this rebuttable presumption to apply under the NYLL, as well as the FLSA.  *See, e.g.*, *Pinovi*, 2015 WL 4126872, at *4; *Pastor v. Alice Cleaners, Inc.*, No. 16cv7264 (JLC), 2017 WL 5625556, at *2 (S.D.N.Y. Nov. 21, 2017); *Pinovi*, 2015 WL 4126872, at *4; *Amaya v. Superior Tile & Granite Corp.*, No. 10cv4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012).  "[T]he employer can rebut the presumption by showing an employer-employee agreement that the salary covers a different number of hours."  *Giles*, 41 F. Supp. 2d at 317.  Absent evidence that the employer and employee understood that the fixed weekly salary included overtime hours, a court will find that the weekly salary covered

only the first 40 hours. *See Pastor*, 2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at

*4-5; *Amaya*, 2012 WL 130425, at *9; *cf. Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327,

335, 338 (S.D.N.Y. 2005) (finding that the FLSA's rebuttable presumption had been overcome

where the plaintiff conceded that his salary covered 50 hours of work).

Although a plaintiff may be "entitled to recover unpaid minimum wages and overtime

pay under both the FLSA and the [NYLL], [he or she] may not recover twice." *Cao v. Wu Liang*

*Ye Lexington Rest., Inc.*, No. 08cv3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y.

Sept. 30, 2010). Instead, "[w]here a plaintiff is entitled to damages under both federal and state

wage law, a plaintiff may recover under the statute which provides the greatest amount of

damages." *Wicaksono v. XYZ 48 Corp.*, No. 10cv3635 (LAK) (JCF), 2011 WL 2022644, at *3

(S.D.N.Y. May 2, 2011) (internal quotation marks and citation omitted), *report and*

*recommendation adopted*, 2011 WL 2038973 (May 24, 2011). Accordingly, when calculating

minimum-wage damages, the higher of either the federal or the New York minimum wage

should be used for any period covered by both statutes. *Id.*

### E.     Tip-Credit Notice Requirements

Under the FLSA, an employer may take a "tip credit" on a tipped employee's wages,

allowing the employee to be paid a lower minimum wage, as long as the employee's total wages,

including tips, are equal to or greater than the minimum wage for non-tipped workers. *See*

29 U.S.C. § 203(m)(2)(A). An employer must notify an employee before taking a tip credit and,

in an FLSA case, has the burden of proving that this notice was given. *Inclan v. N.Y. Hospitality*

*Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015). Similarly, the NYLL has a tip-credit notice

requirement. 12 N.Y.C.R.R. § 146-2.2. Notice under both laws must be sufficient to apprise the

employee of the tip credit provision and of the fact that their employer intends to take the credit

with respect to their salary. *See Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 475

(S.D.N.Y. 2015) (finding display of generic government FLSA posters to be insufficient notice); *see also Chan v. Sung Yue Tung Corp.*, No. 03cv6048, 2007 WL 313483, at *19 (S.D.N.Y. Feb. 1, 2007) (finding notice insufficient when provided in English to Spanish-speaking employees and when displayed inconspicuously), *abrogated on other grounds by Barenboim v. Starbucks Corp.*, 698 F.3d 104 (2d Cir. 2012).

Provided adequate notice is given, an employer may take a tip credit for a service employee. 29 U.S.C.A. § 203(m)(2)(A); 12 N.Y.C.R.R. § 146-1.3. When, however, a service employee spends a substantial amount of his or her day performing non-tipped duties, an employer may not take a tip credit for that day. *Salinas*, 123 F. Supp. 3d at 470; 12 N.Y.C.R.R. § 146-2.9 (an employer may not take a tip credit for an employee for any day he or she spends two hours or more, or more than 20 percent of his or her shift – whichever is less – working a non-tipped occupation).

### F. Spread-of-Hours Pay Pursuant to the NYLL

Under the NYLL (but not the FLSA), in addition to receiving damages for unpaid regular wages and overtime, an employee is entitled to receive "spread-of-hours" pay, which is "one hour's pay at the basic minimum hourly wage rate" for any workday that lasts longer than 10 hours. 12 N.Y.C.R.R. § 142-2.4(a); *see also* N.Y. Lab. Law § 650, *et seq.* "Spread-of-hours compensation is calculated by multiplying the minimum wage by the number of days an employee worked more than ten hours." *See* 12 N.Y.C.R.R. § 146-1.6.

### G. Liquidated Damages Pursuant to the FLSA and NYLL

In addition to allowing recovery for unpaid minimum wages and overtime compensation, the FLSA provides for the recovery of liquidated damages. *See* 29 U.S.C. § 216(b). Under the statute, a plaintiff is entitled to recover liquidated damages in an amount equal to the amount of

unpaid wages and overtime compensation that the plaintiff was improperly denied, unless the employer demonstrates that it acted in good faith and had a reasonable basis for believing that it had not violated the FLSA. *See id.* (providing that plaintiff-employees who prevail under either Section 206 or 207 of the FLSA are entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and . . . an additional equal amount as liquidated damages"); *see also* 29 U.S.C. § 260 (mandating that an employer pay liquidated damages unless the employer demonstrates that it was acting in "good faith" and "had reasonable grounds for believing" that it was not acting in violation of the FLSA); *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014) (adopting report and recommendation).

"As the Second Circuit has observed, 'the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness. . . . The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the norm, single damages the exception.'" *See Galeana*, 120 F. Supp. 3d at 317 (quoting *Reich*, 121 F.3d at 71 (other internal quotation marks and citations omitted)).

The NYLL also provides for the recovery of liquidated damages at a rate of 100 percent of unpaid wages, including spread-of-hours pay. *See* N.Y. Lab. Law § 663(1); *Castillo v. Zishan, Inc.*, 16cv6166 (JGK) (HBP), 2018 WL 2084142, at *6 (S.D.N.Y. Apr. 6, 2018), *report and recommendation adopted*, 2018 WL 2081853 (May 2, 2018). Although courts within this Circuit were previously split on the question of whether a plaintiff could recover liquidated damages under both the FLSA and the NYLL, *see Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016) (summary order), the Second Circuit has since clarified that

double recovery is not permitted, *id.*  Rather, the "plaintiff should receive the larger of the two

liquidated damages awards."  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).

###### H.   New York State Wage Notice Requirements

###### 1.   Wage Statements

Pursuant to New York's Wage Theft Prevention Act ("WTPA"), an amendment to the

NYLL that was made effective as of April 9, 2011, employers are required to

> 'furnish each employee with a statement with every payment of
> wages, listing the following' information:  (1) the dates of work
> covered by that payment of wages; (2) the employee's name;
> (3) the employer's name, address, and telephone number;
> (4) the rate or rates of pay and basis thereof; (5) gross wages;
> (6) deductions; (7) allowances, if any, claimed as part of the
> minimum wage; and (8) net wages.

*Salinas*, 123 F. Supp. 3d at 475 (quoting N.Y. Lab. Law § 195(3)).

For employer wage-statement violations occurring after February 27, 2015, the WTPA

entitles employees to recover statutory damages of "[$250.00] for each work day that the

violations occurred . . . [,] but not to exceed a total of [$5,000.00]."  N.Y. Lab. Law § 198(1-d).

###### 2.   Wage Notices

In addition, the WTPA requires employers to provide a written wage notice "at the time

of hiring."  N.Y. Lab. Law § 195(1)(a).  The wage notice is required to be "in English and in the

language identified by each employee as the primary language of such employee," *id.*, and must

contain the following information:

> (1) the rate or rates of pay and basis thereof; (2) allowances, if any,
> claimed as part of the minimum wage, including tip, meal, or
> lodging allowances; (3) the regular pay day designated by the
> employer; (4) the employer's name; (5) any 'doing business as'
> names used by the employer; (6) the physical address of the
> employer's main office or principal place of business, and a
> mailing address if different; (7) the employer's telephone number;

and (8) such other information as the commissioner deems material
and necessary.

*Salinas*, 123 F. Supp. 3d at 474 (footnote omitted) (quoting N.Y. Lab. Law § 195(1)(a)).

For employer violations of this requirement occurring after February 27, 2015, the
WTPA entitles employees to recover statutory damages of "[$50.00] for each work day that the
violation occurred . . . [,] but not to exceed a total of [$5,000.00]."  N.Y. Lab. Law § 198(1-b).

## I.    Prejudgment Interest

Generally, "[t]he decision to award prejudgment interest is discretionary, and is based on
the need to fully compensate the wronged party, [the] fairness of the award, and the remedial
purpose of the statute involved."  *Najnin v. Dollar Mountain, Inc.*, No. 14cv5758, 2015 WL
6125436, at *3 (S.D.N.Y. Sept. 25, 2015).  Given that FLSA liquidated damages serve a
compensatory, rather than punitive, purpose, "there is no need to employ pre-judgment interest to
restore Plaintiffs to a position they would have otherwise enjoyed absent the wage-protection
violation."  *Cabrera v. 1560 Chirp Corp.*, No. 15cv8194 (TPG) (DF), 2017 WL 1289349, at *8
(S.D.N.Y. Mar. 6, 2017) (internal quotation marks and citation omitted), *report and
recommendation adopted*, 2017 WL 1314123 (Apr. 6, 2017).  Thus, a plaintiff who recovers
liquidated damages under the FLSA is not also entitled to prejudgment interest on his or her
FLSA damages.  *See, e.g.*, *id.*; *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48
(E.D.N.Y. 2015) ("'It is well settled that in an action for violations of the [FLSA] prejudgment
interest may not be awarded in addition to liquidated damages.'" (quoting *Begum v. Ariba Disc.,
Inc.*, No. 12cv6620 (DLC) (KNF), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015))).  As a
result, "courts do not award statutory prejudgment interest on any portion of the recovery for
which liquidated damages were awarded under the FLSA."  *Andrade v. 168 First Ave Restaurant*

*Ltd.*, No. 14cv8268 (JPO) (AJP), 2016 WL 3141567, at *9 n.7 (S.D.N.Y. June 3, 2016), *report and recommendation adopted*, 2016 WL 3948101 (July 19, 2016).

Based on a provision added to the NYLL in 2011, however, a plaintiff who recovers liquidated damages under the NYLL is also entitled to prejudgment interest. *See Hernandez v. Jrpac Inc.*, No. 14cv4176 (PAE), 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016) (noting that, under the NYLL, a plaintiff may receive both an "award of prejudgment interest alongside a liquidated damages award" (citing N.Y. Lab. Law § 198(1-a))); *see also Castillo v. RV Transp., Inc.*, No. 15cv0527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016). Under the state law, though, "[p]rejudgment interest is calculated . . . [only] on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. East Manor USA Inc.*, No. 10cv4313 (NG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted), *report and recommendation adopted*, 2013 WL 2152176 (May 17, 2013).

"Pursuant to [New York] state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." *Najnin*, 2015 WL 6125436, at *4; *see also* N.Y.C.P.L.R. §§ 5001, 5004. As to the date from which interest should be found to run, "Section 5001(b) sets forth two methods of calculating prejudgment interest[]":

> First, interest may be calculated from 'the earliest ascertainable date the cause of action existed,' N.Y. C.P.L.R. § 5001(b). However, '[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.' *Id.*

*Alvarez v. 215 N. Ave. Corp.*, No. 13cv0049 (NSR) (PED), 2015 WL 3855285, at *3 (S.D.N.Y. June 19, 2015) (adopting report and recommendation). It is within the Court's "'wide discretion'" to "'determin[e] a reasonable date from which to award prejudgment interest.'" *Id.* (quoting *Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir. 1994)).

**J.      Joint and Several Liability of "Employers" Under the FLSA and NYLL**

The FLSA imposes liability on "employers," a group that is "broadly define[d] [to include] 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Doo Nam Yang*, 427 F. Supp. 2d at 342-43 (quoting 29 U.S.C. § 203(d)).  "The definition of 'employer' is similarly expansive under New York law, encompassing any 'person employing any [employee].'" *Id*. (quoting N.Y. Lab. Law §§ 2(6)).  To determine whether a party qualifies as an "employer" under both statutes' "generous definitions," the relevant inquiry is "whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the economic reality presented by the facts of each case." *Id*. (quoting *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999)).

"[W]hen examining the 'economic reality' of a particular situation," courts will evaluate various factors, none of which, individually, is dispositive. *Id.*  These factors include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Herman,* 172 F.3d at 139).  Further, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages." *Id*. (internal quotation marks and citation omitted) (finding defendants jointly and severally liable under both the FLSA and the NYLL).

**K.      Attorneys' Fees and Costs**

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his or] her reasonable attorney's fees and costs." *Najnin*, 2015 WL 6125436, at *4; s*ee* 29 U.S.C. § 216(b);

N.Y. Lab. Law § 198(1-a).  The Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award.  *See Barfield v. New York City Health & Hosp. Corp.*, 537 F.3d 132, 151-52 (2d Cir. 2008).  As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates a "'presumptively reasonable fee'" (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008))).  The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the Court with sufficient information to assess the fee application, *see New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum*, 465 U.S. at 895 n.11.  Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987).  In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay."  *Arbor Hill*, 522 F.3d at 190.  In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Id.*  When an attorney's requested hourly rate is higher

17

than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate.  *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the Court should reduce the stated hours accordingly.  *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (holding that time component should not reflect excessive hours).  In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), and whether the work was complicated or straightforward, *see Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13cv3061 (JGK), 2014 WL 2624759, at *6 (S.D.N.Y. June 10, 2014) (considering "the straightforward nature of the work performed [and] the relative simplicity of the issues involved" (internal quotation marks and citations omitted)).

In addition to the lodestar amount, attorneys' fees may include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted).  These expenses, or "costs," may include photocopying, travel, telephone costs, and postage, *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987), as well as filing fees and reasonable process-server fees, *Rosendo v. Everbrighten Inc.*, No. 13cv7256 (JGK) (FM), 2015 WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL 4557147 (July 28, 2015).

II.   <u>**PLAINTIFF'S DAMAGES CLAIMS**</u>[1]

As a general matter, in the consideration of damages, this Court finds Plaintiff's

submissions to be sufficient to meet his burden of proof to establish, to a reasonable certainty, his

applicable overtime, spread-of-hours, and statutory damages, such that a hearing on such

damages is not required.  *See Fustok*, 873 F.2d at 40 (noting that the district court has the

discretion to determine whether a hearing is necessary).  As noted above, in the context of a

default, where the defendant has neither provided any employment records, nor otherwise

rebutted the plaintiff's damages claims, it is sufficient for a plaintiff to rely on his "recollection

alone" to establish the hours he worked and the rates he should have been paid.  *Santillan*,

822 F. Supp. 2d at 294 (internal quotation marks and citations omitted).  In this case, this Court

accepts as true, for purposes of this inquest, the well-pleaded factual allegations presented in the

Complaint, Plaintiff's Declaration, and counsel's Declaration, which set out Plaintiff's

recollections regarding the hours he worked and the rates of pay he earned for that work.  This

Court finds that the Complaint and the Declarations together contain adequate information to

allow for a reasonable assessment of damages.

This Court has carefully reviewed the chart annexed to the Clark Declaration reflecting

Plaintiff's proposed damages calculation.  (*See* Clark Decl., Ex. 7 (the "Damages Chart")

(Dkt. 25-7).)  The Damages Chart details the amount that Plaintiff was actually paid per week

("Credited Weekly Pay"), the amount he should have been paid for that week according to the

applicable statutory minimum wage and overtime rate given his base rate of pay ("Lawful

---

[1] As an initial matter, the Court notes that there is no statute-of-limitations issue in this
case.  Plaintiff's earliest claims of unpaid wages are from March 2016, and his Complaint was
filed on March 1, 2018, bringing his claims within the FLSA's two-year, and the NYLL's six-
year, statutes of limitations.

Weekly Pay"), and the difference between the two ("Underpayment Per Week").  (*Id.*)  The total amount of unpaid overtime is then calculated by multiplying the number of weeks in the pay period at issue by the amount that Plaintiff was underpaid per week.  (*Id.*)  The Damages Chart also details additional amounts that Plaintiff is seeking, including unpaid spread-of-hours pay, liquidated damages, prejudgment interest, and damages for wage-notice and wage-statement violations.  (*Id.*)

While this Court does not take issue with the accuracy of the mathematical calculations contained in the Damages Chart, it does find a flaw in one assumption made by Plaintiff that underlies those calculations.  Specifically, Plaintiff has implicitly assumed that the minimum-wage rates for "large employers" apply to Defendants, even though neither the Complaint nor the Declarations filed in this case allege that Defendants employed 11 or more people at Cafe Cosina, such that the establishment would qualify as a "large employer."  N.Y. Lab. Law § 652(1)(a)(i).  Given the lack of any support for Plaintiff's assumption, this Court will, where applicable, apply the minimum-wage rates for "small employers," as defined by N.Y. Lab. Law § 652(1)(a)(ii).  *See Reyes v. Lincoln Deli Grocery Corp.*, No. 17cv2732 (KBF), 2018 WL 2722455, at *7 (S.D.N.Y. June 5, 2018) (applying lower, small-employer rate where "the Complaint [was] completely silent as to how many people [the defendant] employ[ed][] [and] therefore there [was] no evidentiary basis for the Court to calculate damages based on the higher rate"); *but see Sanchez v. Jyp Foods Inc.*, No. 16cv4472 (JLC), 2018 WL 4502008, at *9 n.13 (S.D.N.Y. Sept. 20, 2018) ("[P]laintiffs did not provide information about the number of employees employed by [defendants] so that the Court could determine . . . the applicable minimum wage . . . . Nevertheless, in light of defendants' default, the Court gives plaintiffs the benefit of the doubt and applies the [higher] rate requested by plaintiffs."  (citation omitted)).

This use of the lower minimum-wage rate will modestly affect Plaintiff's proffered calculations, both in terms of whether Plaintiff is entitled to any unpaid minimum wage compensation, and the amount due to him for unpaid spread-of-hours pay.

### A.   Defendants' Lack of Entitlement to a Tip Credit

As mentioned above, Plaintiff alleges that Defendants only accounted for him in their payroll as a tipped delivery worker, despite the fact that, on a daily basis, he engaged in a substantial amount of non-tipped work, including "dishwashing, cleaning the restaurant, sweeping[,] mopping[,] and bringing products up from the basement for cooks."  (Reyes Decl. ¶ 9; Compl. ¶¶ 6, 10.)  Additionally, Plaintiff alleges that he never received notice that Defendants were taking a tip credit against his wages.  (*See* Reyes Decl. ¶ 20.)

Due to Defendants' default, this Court accepts Plaintiff's allegations as true and concludes that Defendants were not entitled to a tip credit with respect to Plaintiff's wages. A failure to provide any notice to Plaintiff of the FLSA or NYLL tip-credit provisions disqualifies Defendant from claiming a tip credit.  12 N.Y.C.R.R. § 146-1.3; *Salinas*, 123 F. Supp. 3d at 465.  Similarly, Plaintiff's regular performance of substantial non-tipped work, such as the tasks described above, took him outside the category of employees whose base hourly pay could legitimately have been reduced because of their receipt of tips.  *See* 12 N.Y.C.R.R. § 146-2.9; *Salinas*, 123 F. Supp. 3d at 471.  Therefore, this Court finds Plaintiff was entitled to be paid at least the statutory minimum wage for the time that he was employed by Defendants.  *Inclan*, 95 F. Supp. 3d at 498.

### B.   Plaintiff's Claim for Unpaid Minimum Wages and Overtime Compensation

As set out above, Plaintiff alleges that, during his employment as a delivery worker, he was paid a fixed salary of $450 per week from March 7, 2016 to October 15, 2016 and $500 per

week from January 1, 2017 to February 2, 2018.  (*See* Reyes Decl. ¶¶ 15-16.)  This Court takes

these facts as true, as well as the alleged fact that Plaintiff consistently worked approximately

73 hours per week, without any type of break.  (*See id.* ¶¶ 13, 19.)  Given the absence of any

evidence of an agreement between Plaintiff and his employers that his weekly salary would

cover the full 73 hours worked each week, this Court presumes that Plaintiff's $450 and $500

weekly salaries covered only the first 40 hours per week that he worked.  *See Paster*, 2017 WL

5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at *4-5; *Amaya*, 2012 WL 130425, at 9.  This

means that he was paid at a base hourly rate of $11.25 ($450/week ÷ 40 hours) for the period

from March 7, 2016 to October 15, 2016, and at a base hourly rate of $12.50 ($500/week ÷ 40

hours) for the period from January 1, 2017 to February 2, 2018.

      Throughout the relevant period, these base hourly rates were greater than both the

then-applicable federal minimum wage, *see* 29 U.S.C. § 206(a)(1)(C) (setting minimum wage at

$7.25 per hour for the period), and the New York minimum wages for small New York City

employers, *see* N.Y. Lab. Law § 652(1)(a)(ii) (setting minimum wage of $9.00 per hour for the

relevant period in 2016, $10.50 per hour commencing December 31, 2016, and $12.00 per hour

commencing December 31, 2017).  For this reason, Plaintiff was not deprived of minimum

wages, although he is entitled to recover the overtime compensation that he did not receive.

In this regard, Plaintiff should have received overtime pay (*i.e.*, one-and-one-half times his base

hourly rate pursuant to the NYLL), at the hourly rate of $16.875 (*i.e.*, $11.25 x 1.5) from

March 7, 2016 to October 15, 2016 (a period reasonably estimated by Plaintiff as 32 weeks), and

at the hourly rate of $18.75 (*i.e.*, $12.50 x 1.5) from January 1, 2017 to February 2, 2018

(a period of approximately 57 weeks), for the hours that he worked in excess of 40 hours per

week during those periods.  This calculates to $17,820.00 (*i.e.*, $16.875/hour x 33 hours/week x

22

32 weeks) for the first of these periods and $35,268.75 (*i.e.*, $18.75/hour x 33 hours/week x 57 weeks) for the second.

Thus, Plaintiff is entitled to recover a total of $53,088.75 in unpaid overtime compensation.[2]

### C.   Plaintiff's Claim for Spread-of-Hours Compensation

As discussed above, Plaintiff asserts that, throughout the relevant period, he worked approximately 12 hours per day, six days per week.  (*See* Reyes Decl. ¶ 13.)  Therefore, under the NYLL, Plaintiff is entitled to one additional hour's pay at the statutory minimum-wage rate for each day that he worked.  *See* 12 N.Y.C.R. § 142-2.4.  Given the minimum wage increases that occurred during the course of Plaintiff's employment (*see* Discussion, *supra*, at Section I(E)), his spread-of-hours compensation must be calculated separately for each period with a differing effective minimum wage.

For the period from March 7, 2016 to October 15, 2016, New York's minimum wage was $9.00 per hour.  Thus, using Plaintiff's reasonable estimate of 32 weeks worked during that period, Plaintiff was underpaid for that period in the amount of $1,728.00 (*i.e.*, $9.00/day x 6 days/week x 32 weeks).  For the period from January 1, 2017 to December 30, 2017, New York's minimum wage was $10.50 per hour.  (*See supra*, at n.2.)  Thus, for the 52 weeks in that period, Plaintiff was underpaid in the amount of $3,276.00 (*i.e.*, $10.50/day x 6 days/week x 52 weeks).  Finally, for the period from December 31, 2017 to February 2, 2018, New York's

---

[2] This total deviates slightly from Plaintiff's proposed damages calculation as reflected in counsel's Damages Chart because Plaintiff's counsel used the $13.00 New York minimum wage applicable to large New York City employers for the period commencing December 31, 2017, and therefore determined that, for the short time that Plaintiff worked on and after that date, he was entitled to recover both unpaid minimum wages and a slightly higher amount of unpaid overtime compensation than this Court has calculated.  (*See* Damages Chart.)

minimum wage was $12.00 per hour.  Thus, using Plaintiff's reasonable estimate of five weeks worked during that period, Plaintiff was underpaid for that period in the amount of $360.00 (*i.e.*, $12.00/day x 6 days/week x 5 weeks).  In total, Plaintiff's spread-of-hour damages equal $5,364.00.[3]

### D.    Plaintiff's Claim for Liquidated Damages

As discussed above, both the FLSA and the NYLL also provide for the recovery of liquidated damages.  Indeed, both statutes mandate that the Court award liquidated damages to a prevailing plaintiff, unless the defendant employer demonstrates that it acted in good faith or had a reasonable basis to believe that it was acting in compliance with the law.  (*See* Discussion, *supra*, at Section I(G).)  Here, given their default, Defendants have not met their burden of proving that they acted in good faith, *see Galeana*, 120 F. Supp 3d at 317, and thus liquidated damages are available under the provisions of both statutes, 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).

Under New York law, Plaintiff is entitled to recover 100 percent of his unpaid wages, from the entire period covered by his claim, in liquidated damages.  *See* N.Y. Lab. Law § 663(1). Plaintiff is due $53,088.75 in unpaid overtime compensation and $5,364.00 in unpaid spread-of-hours pay.  Therefore, in total, Plaintiff is entitled to $58,452.75 in liquidated damages under the

---

[3] Again, this total deviates slightly from Plaintiff's counsel's proposed damages calculation because counsel used the minimum-wage rates applicable to large employers.  (*See* Damages Chart.)  Additionally, Plaintiff's counsel used an $8.75-per-hour minimum wage in counsel's calculations for the period from March 7, 2016 to October 15, 2016, when the minimum wage was in fact $9.00 per hour.  *See* N.Y. Lab. Law § 652(1).

NYLL, which, again, is slightly less than what Plaintiff calculated.  (*See* Damages Chart; *see also supra*, at ns. 2, 3.)

      **E.**      **Plaintiff's Claim for Statutory Damages Under the WTPA**

      Plaintiff contends that, throughout the duration of his employment, Defendants failed to provide him with wage statements and wage notices in violation of the WTPA, and that he is therefore entitled to additional statutory damages pursuant to the NYLL.  (Compl. ¶¶ 52-57, 107-11.)  Specifically, Plaintiff seeks $5,000 for Defendants' failure to provide wage statements, and $5,000 for their failure to provide wage notices.  (*Id.* ¶¶ 109, 112)

      As laid out above, the WTPA imposes statutory damages of $250 per work day, capped at $5,000, for the failure to provide employees with compliant wage statements, where the violations occurred after February 27, 2015.  (*See* Discussion, *supra*, at Section I(H)(1); *see also* N.Y. Lab. Law § 198(1-d).)  Thus, accepting Plaintiff's claim that he was employed by Defendants for more than 20 days between March 7, 2016 and February 2, 2018, and that he never received a wage statement from Defendants (*see* Compl. ¶ 56), he is entitled to the maximum $5,000 in statutory damages for these wage-statement violations.

      The WTPA also imposes statutory damages of $50 per work day, again capped at $5,000, for the failure to provide employees with compliant wage notices, where the violations occurred after February 27, 2015.  (*See* Discussion, *supra*, at Section I(H)(2); *see also* N.Y. Lab. Law § 198(1-b).)  Accepting Plaintiff's claim that he did not receive a wage notice for the entire duration of his employment (Compl. ¶ 57), which included more than 100 days after February 27, 2015, he is also entitled to the maximum of $5,000 in statutory damages for wage-notice violations.  *See Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12cv9353 (PAC), 2015

WL 1881080, at *4 (S.D.N.Y. Apr. 24, 2015); *Cuzco v. F & J Steaks 37th St. LLC*,

No. 13cv1859 (PAC), 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014).

      This Court therefore recommends that Plaintiff be awarded the requested $10,000 in

statutory damages for Defendants' failure to provide him with both wage statements and wage

notices during the time periods for which such damages are available.

      **F.**     **Plaintiff's Claim for Prejudgment Interest**

      Plaintiff also seeks prejudgment interest on his unpaid wages and spread-of-hours pay.

(Clark Decl. ¶ 14.)  As noted above, the NYLL provides that a plaintiff may recover both

liquidated damages and prejudgment interest.  *See Hernandez*, 2016 WL 3248493, at *35;

*Castillo*, 2016 WL 1417848, at *3.  While "courts do not award statutory prejudgment interest on

any portion of the recovery for which liquidated damages were awarded under the FLSA,"

*Andrade*, 2016 WL 3141567, at *9 n.7, where, as here, a plaintiff is entitled to be awarded

liquidated damages pursuant to the NYLL, the plaintiff is "eligible for an award of prejudgment

interest on the full . . . damages arising out of his . . . wage claims."  *Xochimitl v. Pita Grill of

Hell's Kitchen, Inc.*, No. 14cv10234 (JGK) (JLC), 2016 WL 4704917, at *18 (S.D.N.Y. Sept. 8,

2016), *report and recommendation adopted*, 2016 WL 6879258 (Nov. 21, 2016).  As set out

above, prejudgment interest under the NYLL is awarded at a rate of nine percent per annum,

*Najnin*, 2015 WL 6125436, at *4; N.Y.C.P.L.R. § 5004, and may be calculated from either the

"earliest ascertainable date the cause of action existed" or "from a single reasonable intermediate

date," where damages were incurred at various times, N.Y.C.P.L.R. § 5001(b).

      As Plaintiff's claim for unpaid overtime wages spans two different periods, this Court

calculates prejudgment interest separately from the midpoint date of each period of employment

for which he seeks to recover damages.  This calculation – made up to August 27, 2018, which

was the date of Plaintiff's damages submissions – yields the following amounts of prejudgment interest:

| From | To | Principal (Unpaid Minimum Wage and Overtime Damages) | Interest Calculation (Principal x .09 x Years from Midpoint Date to 8/27/2018) | Interest Owed |
|---|---|---|---|---|
| 3/7/16 | 10/15/16 | $17,820.00 | $17,820.00 x .09 x (792/365) | $3,480.03 |
| 1/1/17 | 2/2/18 | $35,268.75 | $35,268.75 x .09 x (405/365) | $3,522.04 |
| | | | | Total: $7,002.07[4] |

Additionally, with respect to Plaintiff's unpaid spread-of-hours pay, given that Plaintiff's damages accrued variably due to increases in the applicable minimum wage, this Court again calculates prejudgment interest separately for each time period as to which a particular minimum-wage rate applied. *Cf. Said v. SBS Elecs., Inc.*, No. 08cv3067 (RJD) (JO), 2010 WL 1265186, at *9 (E.D.N.Y. Feb. 24, 2010) (calculating interest on entire employment period, as "the amounts owed accrued at an essentially regular rate"), *report and recommendation adopted as modified on other grounds*, 2010 WL 1287080 (Mar. 31, 2010). This calculation yields the following additional amounts of prejudgment interest:

| From | To | Principal (Spread-of-Hours Damages) | Interest Calculation (Principal x .09 x Years from Midpoint Date to 8/27/2018) | Interest Owed |
|---|---|---|---|---|
| 3/7/16 | 10/15/16 | $1,728.00 | $1,728.00 x .09 x (792/365) | $337.46 |
| 1/1/17 | 12/30/17 | $3,276.00 | $3,276.00 x .09 x (422/365) | $340.88 |
| 12/31/17 | 2/2/18 | $360.00 | $360.00 x .09 x (223/365) | $19.80 |
| | | | | Total: $698.14[5] |

---

[4] This figure is slightly different from the amount shown in Plaintiff's submitted Damages Chart, because (1) Plaintiff's counsel rounded up in his calculation of years, whereas this Court did not, and (2) this Court again applied the minimum-wage rate for small employers in calculating the principal amounts, as described above.

[5] This figure is slightly different from the amount shown in Plaintiff's submitted Damages Chart because, in addition to the reasons set out in n.4, *supra*, Plaintiff's counsel used

Accordingly, this Court recommends that Plaintiff be awarded a total of $7,700.21 in prejudgment interest up to the date of Plaintiff's damages submissions (August 27, 2018), with additional interest to be calculated by the Clerk of Court, at a rate of nine percent per annum, from August 28, 2018 to the date that final judgment is entered.

This Court therefore recommends that Plaintiff be awarded – on unpaid overtime compensation, and spread-of-hours pay; liquidated damages; and WTPA statutory damages – a total of $126,905.50, plus $7,700.21 in prejudgment interest, with additional prejudgment interest to be calculated by the Clerk of Court.

### G.      Joint and Several Liability

Plaintiff requests that defendants CCRI, Carina, and Moran be held jointly and severally liable for the damages owed to Plaintiff in this action.  (*See* Compl. ¶¶ 27-36.)  Under both the FLSA and NYLL, all those qualifying as "employers" – *i.e.*, those who "possessed the power to control the workers in question, . . . with an eye to the economic reality presented by the facts of each case," *Doo Nam Yang*, 427 F. Supp. 2d at 342 (internal quotation marks and citation omitted) – may be held liable for statutory violations, *id.*  In this case, Plaintiff's well-pleaded allegations are sufficient to support a finding that, during the period when Plaintiff was an employee at the business in question, all Defendants each had control over the "economic reality" of Plaintiff's employment.

Plaintiff has alleged that both of the individual defendants "determine[d] the wages and compensation of [] employees . . . establishe[d] the schedules . . . maintain[ed] employee records[,] and ha[d] the authority to hire and fire employees."  (Compl. ¶¶ 25-26)  Plaintiff has

---

an $8.75-per-hour minimum wage rather than the correct $9.00-per-hour minimum wage to calculate spread-of-hours pay.

also alleged that defendants Carina and Moran not only possessed an "ownership interest" in CCRI (*id.* ¶ 28), but also had "operational control" of the corporation (*id.*).  Taking these allegations as true upon Defendants' default, this Court finds that CCRI, Carina, and Moran should all be found to have been employers of Plaintiff, such that it would be appropriate for the Court to hold them jointly and severally liable on the judgment.

## III.   ATTORNEYS' FEES AND COSTS

Plaintiff seeks $5,400.00 in attorneys' fees for 12 hours of work performed by counsel in connection with this action, and litigation costs in the amount of $564.40.  (Clark Decl., Ex. 6.) For the reasons that follow, the Court recommends that attorneys' fees be awarded in the reduced amount of $4,275.00, and that litigation costs be awarded in the reduced amount of $400.00.

### A.   Reasonable Hourly Rates

Plaintiff was represented by Clark and by Michael Faillace, Esq. ("Faillace"), both with the firm of Michael Faillace & Associates, P.C. (the "Faillace Firm").  (*See* Clark Decl. ¶ 14(i).) Faillace is the managing partner of the Faillace Firm, and has been practicing employment law since 1983.  (*See id.*)  He taught employment-discrimination law as an adjunct professor at Fordham University School of Law from 1992 to 2010, and at Seton Hall University from 1995 to 1998, and he is described in Clark's Declaration as a "nationally-renowned speaker and writer on employment law."  (*Id.*)  He billed at a rate of $450.00 per hour.  (*Id.*)

Clark was a senior associate at the Faillace Firm until he left the firm and withdrew from this case on March 28, 2019.  (*Id.*; Dkt. 33.)  Clark graduated from New York University Law School in 2010.  (Clark Decl. ¶ 14(i).)  Following law school, Clark was awarded a New York Police Department Law Graduate Fellowship.  (*Id.*)  In that role, he advised police executives on a variety of criminal and employment law issues.  (*Id.*)  Additionally, at the time of  counsel's

submission, Clark was an active member of the National Employment Lawyers Association. (*Id.*)  He also billed at a rate of $450.00 per hour.  (*See id.*, Ex. 6.)

This Court has previously recommended approval of an hourly rate of $450.00 for Faillace, given his many years of experience in employment litigation, *see Almanzar v. 1342 St. Nicholas Avenue Restaurant Corp.*, No. 14cv7850 (VEC) (DF), 2016 WL 8650464 at *19 (S.D.N.Y., Nov. 7, 2016), *report and recommendation adopted*, 2017 WL 1194682 (Mar. 30, 2017), and finds it appropriate in this case as well.  Clark's hourly rate, on the other hand, is higher than the "prevailing [rates] in the community for similar services by lawyers of reasonably comparable experience." *Blum*, 465 U.S. at 894 n.11.  Several courts in this District have recently approved only a reduced hourly rate of $200.00 to $250.00 per hour for Clark. *See, e.g.*, *Hernandez v. Jrpac Inc.*, No. 14cv4176 (PAE), 2017 WL 66325, at *2 (S.D.N.Y. Jan 1, 2017) (following a three-day bench trial, awarding fees at the rate of $250.00/hour for Clark); *Marquez v. Erenler, Inc.*, No. 12cv8580 (GHW), 2014 WL 5847441, at *2-3 (S.D.N.Y. Nov. 10, 2014) (setting Clark's rate at $200.00/hour following a bench trial).  In fact, this Court itself has recommended that Clark's rates be reduced to $225.00 per hour.  *See Sanchez v. I&A Restaurant Corp.*, No. 14cv0726 (DF), 2017 WL 2537814 at *4 (S.D.N.Y. May 22, 2017); *see also Rodriguez v. Obam Mgmt.*, No. 13cv00463 (PGG) (DF), 2016 U.S. Dist. LEXIS 34154, at *74 (S.D.N.Y. Nov. 7, 2016) (amended report and recommendation).

Given that the facts of this case were not complicated and that Defendants defaulted, and in keeping with its prior recommendations, this Court recommends that the Court reduce Clark's requested rate to $225.00 per hour.

### B.   <u>Reasonable Hours</u>

In support of Plaintiff's request for attorneys' fees, the Faillace Firm has provided the

Court with a copy of its time records, which show the work performed by counsel in connection

with this action, and the time expended.  (*See* Clark Decl., Ex. 6.)  All but one of the time entries

describe reasonable tasks that appear to have been performed within a reasonable amount of

time.  (*See id*.)  The single recorded entry for which, in this Court's view, counsel's time should

be reduced is Faillace's entry for February 28, 2018, reflecting two hours spent on "Legal

Research."  (*Id*.)  Not only is this description of the work performed overly vague, *see, e.g.*,

*D.J. v. City of New York*, No. 11cv5458 (JGK) (DF), 2012 WL 5431034, at *7-8 (S.D.N.Y.

Oct. 16, 2012) (noting that attorney time entries that merely indicate that "research" was

performed are generally considered too vague to justify full recovery), *report and

recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (Nov. 7,

2012), but a reduction in hours is warranted where a task, such as legal research, could have been

performed by an associate at a lower rate, *see generally Lane Crawford LLC v. Kelex Trading

(CA) Inc*., No. 12cv9190 (GBD) (AJP), 2013 WL 6481354, at *9 (S.D.N.Y. Dec. 3, 2013),

*report and recommendation adopted*, 2014 WL 1338065 (Apr. 3, 2014); *see also Harrell v. City

of New York*, No. 14cv7246 (VEC) (DF), 2017 WL 9538163, at *9 (S.D.N.Y. July 20, 2017)

("[L]egal research is generally considered to be work that is capable of being performed by more

junior attorneys and that should not be billed at partner-level rates."), *report and

recommendation adopted as modified on other grounds*, 2017 WL 4119280 (Sept. 15, 2017).

For these reasons, this Court recommends reducing Faillace's compensable time on February 28,

2018 for "Legal Research" to one hour.

31

### C.     Lodestar Calculation

Using the reasonable rates and hours described above would result in the following

lodestar calculation:

| Attorney | Reasonable Hourly Rate | Reasonable Hours | Total |
|---|---|---|---|
| Faillace | $450.00 | 8 | $3,600.00 |
| Clark | $225.00 | 3 | $675.00 |
| | | | Total:  $4,275.00 |

This Court finds no exceptional circumstances here that would warrant deviation from the

lodestar, *see Perdue v. Kenny A. ex rel. Wynn*, 559 U.S. 542, 552 (2010), and therefore

recommends that Plaintiff be awarded attorneys' fees in the amount of $4,275.00.

### D.     Costs

Plaintiff additionally seeks litigation costs, in the amount of $564.40, including a $400

filing fee and three process-server fees, one for $64.30 and two for $50.00.  (Clark Decl., Ex. 6.)

While this Court takes judicial notice of the filing fee and therefore finds it to be compensable,

*see Guo v. Tommy's Sushi, Inc.*, No. 14cv3964 (PAE), 2016 WL 452319, at *7 (S.D.N.Y. Feb. 5,

2016), this Court does not recommend that the process-server fees be awarded.  Apart from its

own invoice itemizing these fees, the Faillace Firm has failed to submit any underlying

documentation supporting that the fees were incurred.  It is Plaintiff's burden to demonstrate that

the litigation costs sought were reasonably incurred and are properly recoverable from the

defaulting Defendants, and in the absence of supporting documentation concerning the requested

process-server fees, Plaintiff has not met his burden with respect to those litigation costs.  *Pastor*,

2017 WL 5625556, at *9 (declining to award process-server fees where the plaintiff had failed to

submit underlying documentation from its counsel (the Faillace Firm), supporting that the fees

were incurred).  This Court therefore recommends that only $400.00 in costs be awarded.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that defendants Cafe Cousina Restaurant Inc., Maria Carino, and Israel Moran be held jointly and severally liable for:

1.　　Damages in the amount of $126,905.50, representing:

　　　a.　　$53,088.75 in unpaid overtime compensation;

　　　b.　　$5,364.00 in unpaid spread-of-hours pay;

　　　c.　　$58,452.75 in liquidated damages; and

　　　d.　　$10,000.00 in statutory damages under the WTPA;

2.　　Prejudgment interest in the amount of:

　　　a.　　$7,700.21 up to August 27, 2018 (the date that Plaintiff filed his damages submission); and

　　　b.　　additional prejudgment interest, to be calculated by the Clerk of Court at the rate of nine percent per anum on the principal amount of $58,452.75 from August 28, 2018 to the date of entry of final judgment;

3.　　Attorneys' fees in the amount of $4,275.00; and

4.　　Costs in the amount of $400.00.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer, U.S.D.J., United States Courthouse, 500 Pearl Street, Room 2201, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must

be directed to Judge Engelmayer. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN

(14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE

APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension*

*Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714

F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
       August 27, 2019

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

All counsel (via ECF)

34